UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| W.B. and R.B.<br><br>    Plaintiffs,<br><br>v.<br><br>WILSON COUNTY BOARD OF EDUCATION,<br>STANLEY MOSS, and<br>DONNA WRIGHT,<br><br>    Defendants. | Case No. 3:16-cv-03271<br>Honorable Laurie J. Michelson<br>Magistrate Judge Jeffery S. Frensley |

**OPINION AND ORDER**
**DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [8]**

Almost three years ago, W.B., who had then just finished the sixth grade, was adjudicated delinquent for sexual assault. As a result, Dr. Donna Wright (the Director of Schools for Wilson County) decided that W.B. would not be able to attend a Wilson County school during the 2014–15 school year. That position later changed, with W.B. being offered the alternative of participating in the Tennessee Virtual On-Line School (TVOLS). R.B., W.B.'s father, instead elected homeschooling for W.B for the 2014–15 school year. The following year, R.B. inquired about W.B. attending a brick-and-mortar school, but Wright decided that W.B. would have to attend TVOLS. R.B. enrolled W.B. in TVOLS for the 2015–16 school year, but W.B. did not perform well. The next year, Wright again decided that W.B. could not attend a brick-and-mortar school in Wilson County. R.B., concerned about W.B.'s lack of social interaction while attending TVOLS, elected to move to a neighboring county. There, W.B. attended a brick-and-mortar school during the 2016-17 school year. But living in the neighboring county presents challenges for R.B. and W.B. and they intend to move back to Wilson County. It

appears that before they do, R.B. and W.B. want assurances that W.B. will be able to attend a brick-and-mortar school. (*See* R. 1, PID 6.) For that and other reasons, R.B. and W.B. have sued Wright, Stanley Moss, and the Wilson County Board of Education.

Now awaiting decision is Plaintiffs' motion for a preliminary injunction. (R. 8.) They ask this Court to enjoin Defendants from assigning W.B. to TVOLS once he enrolls in Wilson County schools. For the reasons that follow, the Court finds this request to be premature. The Court will thus deny—without prejudice—Plaintiffs' motion.

I.

A.

In February 2014, W.B. and his father, R.B., moved to Wilson County, Tennessee from Texas. (*See* R. 9, PID 35.) W.B. completed that school year, which was the sixth grade for W.B., at a traditional public school in Wilson County. That summer, however, W.B. was adjudicated delinquent in Texas for aggravated sexual assault and given 24 months' probation and ordered to attend sex-offender treatment. (R. 11, PID 49; R. 13, PID 79.)

In July 2014, a Texas district attorney informed Dr. Donna Wright, the Director of Schools for Wilson County, of W.B.'s delinquency. As the Director of Schools, Wright was (and still is) "the ultimate decision maker with respect to the enrollment, assignment and placement of W.B. in the Wilson County school system." (R. 13, PID 80.) Wright, perhaps with input from Stanley Moss, the Attendance Director for the Wilson County School Board, decided that W.B. would not be able to attend school in Wilson County. (*See* R. 11, PID 51.)

W.B.'s father, R.B., then contacted Elizabeth Taylor, the General Counsel for the State of Tennessee Department of Education. Taylor in turn contacted Wright, informing Wright that

under Tennessee law, a meeting must be held to develop an enrollment plan for a child adjudicated delinquent. (R. 11, PID 57.)

In November 2014, a meeting took place with R.B., Taylor, Wright, Moss, and others. (*See* R. 11, PID 60–61.) At the meeting, the Wilson County personnel apparently took the position that the only placement option for W.B. would be the Tennessee Virtual On-Line School. (*See* R. 9, PID 37.)

According to Wright, "TVOLS is a unique virtual online classroom with an on-site computer lab and in-person teaching assistance, which was developed by the School Board in 2006. TVOLS is fully accredited and staffed by State certified and licensed teachers, and is used by Wilson County students as well as students from across the State of Tennessee." (R. 13, PID 80.)

Although it came after the meeting, a mental-health counselor who had been seeing W.B. wrote a letter to the Wilson County School Board and Wright. (R. 11, PID 62.) The letter stated that, in the counselor's "clinical opinion," W.B. was "at a very low risk for any similar behaviors related to his adjudication." (R. 11, PID 62.) Apparently, this letter did not alter Wright's decision.

R.B. ultimately decided not to enroll W.B. in TVOLS for the 2014–15 school year. W.B. was instead homeschooled during his seventh-grade year.

**B.**

In June 2015, R.B. inquired about W.B.'s enrollment for the 2015–16 school year. (*See* R. 11, PID 64.) In an email to a Wilson County Schools employee, Moss stated, "Please tell the father that he is welcomed to enroll [W.B.] in TVOLS as this was what was offered." (R. 11, PID

63.) Wright, who had been copied on the email, added, "We will also provide a laptop and what is necessary for the program." (*Id.*) R.B. enrolled W.B. in TVOLS for the 2015–16 school year.

But, according to W.B.'s teacher, W.B. did not perform well. For instance, for about a four-month period, W.B. was supposed to meet with his teacher on a weekly basis for reading and math, yet W.B. only attended three to five of these sessions. (R. 11, PID 67.) His teacher also stated, "[w]hen [W.B.] would get way behind on work, and the threat of failing was imminent, his grandmother would send him in. This only happened toward the end of each grading period. At that point, I would sit down with him and go through his schoolwork. It was very evident that he had not taken the time to click through the lessons and learn the material. He had just skipped to the end and done the graded assignment hoping he would pass it." (*Id.*) W.B. was also "caught plagiarizing three different times." (*Id.*) It is R.B. and W.B.'s position that "assigning W.B. to a virtual school has effectively denied him a public education, because he has shown that he does not have the self-motivation that is necessary to be successful at an online school." (R. 15, PID 124.)

## C.

In March 2016, W.B.'s teacher sent an email to Moss. (R. 11, PID 72.) She stated, "I was speaking with [W.B.] today about his intents for next year and he is under the impression that he will be attending [Wilson County High School] this coming year as a [f]reshm[a]n. Has something changed that I am not aware of? Or is he still required to stay with me [at TVOLS]?" (R. 11, PID 72.) Moss responded, "I confirmed with Dr. Wright this afternoon that he will be back with you and not attending WCHS." (*Id.*)

According to W.B.'s counsel, R.B. and W.B.'s grandmother met with Moss and legal counsel for Wilson County Schools in July 2016. (R. 9, PID 38.) R.B. allegedly provided them

4

with two letters. The first was from the Department of Juvenile Services in Grayson County, Texas; it stated, "[W.B.] has satisfied all the conditions of the court and is no longer being monitored by the Department of Children's Services. [W.B.] has always been compliant and respectful." (R. 11, PID 71.) The second letter was from W.B.'s family-service worker. It stated, "After receiving feedback [from W.B.'s counselor,] W.B. did not demonstrate any issues during his counseling nor did he raise any concerns going forward." (R. 11, PID 70.) Apparently, the meeting and letters did not lead to Wright altering her decision about the 2016–17 school year. (*See* R. 1, PID 6.) As such, W.B. was left with TVOLS.

R.B. remained concerned about W.B.'s isolation and lack of social interaction while schooling through TVOLS; so they moved to a neighboring county. (R. 9, PID 38.) There, W.B. has been able to and has attended a traditional brick-and-mortar school. (R. 8, PID 31.)

Still, living outside Wilson County has not been ideal for W.B. and his family. R.B. is a single parent who relies on his mother (W.B.'s grandmother), D.F., to help supervise W.B. before and after school. (R. 1, PID 6.) "D.F. resides in Wilson County and R.B.'s relocation has been a hardship on her as well as on W.B. and R.B." (R. 1, PID 6.)

**D.**

In December 2016, R.B. and W.B. filed this lawsuit against Wright, Moss, and the Wilson County Board of Education. (R. 1.) Plaintiffs allege that Defendants violated the Due Process Clause by depriving W.B. of his property interest in a public education without adequate pre-deprivation procedures (e.g., a hearing) or post-deprivation remedies. (R. 1, PID 6.) Plaintiffs also accuse Defendants of violating Tennessee law by sharing W.B.'s delinquency with those who did not require notice of the adjudication and by failing to (initially at least) convene a meeting to develop an education plan for W.B. (*See* R. 1, PID 2; R. 9, PID 40.)

On April 25, 2017, Plaintiffs moved for a preliminary injunction. (R. 8) Although R.B. and W.B. still live outside of Wilson County, R.B. has indicated that he has found a residence in Wilson County and has averred that he will move there around June 1, 2017. (R. 17, PID 132.) Plaintiffs thus ask this Court to enjoin Defendants "from continuing to prohibit W.B. from enrolling in his school of zone." (R. 8, PID 30.)

## II.

### A.

Before examining the factors that govern a motion for preliminary injunctive relief, the Court must decide whether, under Article III of the Constitution, it has the authority to grant that relief at this moment. According to Defendants, Plaintiffs lack standing to ask this Court to enjoin them from assigning W.B. to TVOLS. (R. 14, PID 115.) Defendants assert that Plaintiffs' request for an injunction is "based upon a hypothetical premise, that the plaintiffs will relocate to Wilson County at some time in the future." (R. 14, PID 116.)

Given a subsequent filing by Plaintiffs, the Court disagrees with Defendants' assertion. In particular, R.B. has submitted an affidavit swearing that on or around June 1, 2017, he "intend[s] to move" (with W.B.) to a specific residence in Mt. Juliet, a city in Wilson County. (R. 17, PID 132.) Defendants have submitted nothing to the contrary. Thus, it is not "hypothetical" or speculative that R.B. and W.B. will move to Wilson County in a little over a week. To the contrary, for purposes of the motion this opinion addresses, the Court finds the fact established.

Still, Defendants' argument about standing—or perhaps more precisely, ripeness, *see Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (noting that standing and ripeness "originate from the same Article III limitation")—has merit. Plaintiffs "are asking that the Court enjoin the Defendants from having the option of assigning W.B. to a virtual, online

6

school once he does enroll." (R. 15, PID 123.) But Plaintiffs have not indicated to the Court that they have applied to enroll. Nor have they indicated that Wright (or whoever else decides) has said that she will assign W.B. to TVOLS for the 2017–18 school year if he enrolls. In other words, Plaintiffs have asked this Court to order Wright not to do something that she might have no intention of doing. And "'[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Kiser v. Reitz*, 765 F.3d 601, 606 (6th Cir. 2014) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998))); *see also Tri-Cities Holdings LLC v. Tennessee Health Servs. & Dev. Agency*, 598 F. App'x 404, 408-11 (6th Cir. 2015) (finding, where plaintiffs needed to comply with zoning ordinance and also obtain a "certificate of need" to open a methadone clinic, that plaintiffs' request to enjoin the ordinance was not ripe given that the application for the certificate was pending and might be denied); *Lawrence v. Chabot*, 182 F. App'x 442, 446 (6th Cir. 2006) (finding, where plaintiff had "withdrawn one [bar] application, and the defendants had not acted upon his second application," that plaintiff's request to enjoin the application of certain attorney-admissions procedures was not ripe).

Although Plaintiffs have not explained why they have not applied for enrollment in Wilson County or otherwise sought Wright's decision before asking this Court to intervene, the parties' briefing and the record suggest two reasons. But neither shows that Plaintiffs are not requesting an advisory opinion from this Court.

One reason Plaintiffs may have asked this Court to issue an injunction right now is that Defendants have implied that Plaintiffs cannot get an answer to their question ("Will W.B. be assigned to TVOLS if he enrolls in Wilson County?") unless they first move to Wilson County. In particular, Wright avers: "*If W.B. applies and is eligible for admission* in the Wilson County

7

school system for the 2017-2018 school year, *then* in my discretion I will determine the school to which he will be assigned in accordance with School Board policy and referencing the criteria outlined in Tenn. Code Ann. § 49-6-3103." (R. 13, PID 80 (emphases added).) Wright adds that W.B. will not be "eligible for admission" "until proper Wilson County residency is established." (*Id.*) And, according to Moss, residency cannot be established by a sworn intent to move to Wilson County. (R. 20, PID 137.) Instead, says Moss, "Normal school system practice is to require, from the parent, at least two separate documents satisfactorily establishing residency in Wilson County such as proof by driver's license, voter's registration, bank statement, mortgage/lease statement, utility bill (ex. water, electric, or gas), or car insurance." (*Id.*)

Defendants' implication that Wright will not opine on W.B.'s school placement until after R.B. and W.B. move to Wilson County strikes the Court as an onerous policy. Surely Plaintiffs would not want to uproot only to learn that once they are replanted, Wilson County will not enroll W.B. in a brick and mortar school. But the legality of Wilson County's enrollment policy containing a residency requirement is not before the Court, nor have the parties briefed the issue. Thus, the Plaintiffs' residency dilemma does not eliminate the ripeness problem with their request for a preliminary injunction.

A second reason that Plaintiffs might have asked this Court to intervene before attempting to enroll or asking Wright for W.B.'s placement is that they believe they already know Wright's answer: W.B. is to attend TVOLS. The Court appreciates Plaintiffs' position. After all, Wright has decided that way each of the past three years. And, in somewhat analogous contexts, Courts have looked to the history of a dispute to find that future harm is not speculative. *Cf. Kiser v. Reitz*, 765 F.3d 601, 609 (6th Cir. 2014) ("A plaintiff asserting standing to challenge a law before it has been enforced against him must show a 'credible fear' that the

8

state or its agents will in fact enforce the law in his case. A threat of future enforcement may be 'credible' when the same conduct has drawn enforcement actions or threats of enforcement in the past." (citation omitted)).

But here, the record also suggests that the past may not be prologue. Not only has W.B. completed his probation and not only has W.B.'s counselor commented favorably on W.B.'s behavior, there is a new fact for Wright to consider: W.B. attended a brick-and-mortar school in a neighboring county during the 2016–17 school year. Nothing in the record suggests that W.B. had any sexual-assault related issues this past school year. So, perhaps, Wright might see things differently than she did before. At least this Court thinks it worthwhile for R.B. to ask her.

In sum, the Court believes that Plaintiffs' request for this Court to "enjoin the Defendants from having the option of assigning W.B. to a virtual, online school once he does enroll" in Wilson County (R. 15, PID 123), is premature. If Plaintiffs can show that Wilson County will provide no answer as to which school W.B. will attend unless they first move to Wilson County, that is a separate challenge that needs to be made. Or if Plaintiffs ask Wright, and she limits W.B. to TVOLS, Plaintiffs can file another motion for preliminary relief.

**B.**

Even if this Court had the authority under Article III to do so, it would not grant Plaintiffs injunctive relief at this time. For a preliminary injunction to issue, Plaintiffs have the burden of showing that, absent an injunction, irreparable harm is likely. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction. Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be

9

awarded upon a clear showing that the plaintiff is entitled to such relief. (citations omitted)); *see also Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006) ("[T]he plaintiffs must show that unless [an injunction issues], they will suffer actual and imminent harm rather than harm that is speculative or unsubstantiated." (internal quotation marks omitted)). As explained, Plaintiffs will not suffer irreparable harm if Wright decides to place W.B. in a Wilson County brick-and-mortar school. As Plaintiffs' anticipated move is still over a week away, they may be able to get an answer before they move. And, of course, they have ample time before the start of the school year to apply and renew their motion for preliminary relief should that need arise. The current record also fails to establish how W.B. would suffer irreparable harm from remaining at his current brick-and-mortar school. As such, the Court is not persuaded that—at this particular moment—Plaintiffs are likely to suffer irreparable harm absent an injunction.

### III.

The Court does not intend to foreclose Plaintiffs from seeking preliminary injunctive relief. It only asks—indeed, the Constitution demands—that Plaintiffs first try to obtain the relief they seek from this Court without a court order. Plaintiffs' motion for preliminary injunction (R. 8) is thus DENIED WITHOUT PREJUDICE.

SO ORDERED.

Dated: May 22, 2017

s/Laurie J. Michelson
LAURIE J. MICHELSON
U.S. DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 22, 2017.

s/Keisha Jackson
Case Manager